IN THE

# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF NEW JERSEY.

### FEBRUARY TERM, 1900.

---

CARRIE F. BRUSH, EXECUTRIX, &c., OF CHARLES B. BRUSH, DECEASED, v. THE INHABITANTS OF THE TOWNSHIP OF UNION.

Submitted December 9, 1899—Decided February 26, 1900.

Under the provisions of the act entitled "An act to provide for sewage and drainage in incorporated townships in which there is a public water-supply," passed April 14th, 1890 (*Gen. Stat.*, p. 3653), as amended by an amendatory act approved April 17th, 1891 (*Id.*, p. 3657), the township committee of any incorporated township in which a supply of water for public or domestic use is furnished from water works were granted, among other things, power to cause to be made surveys, plans and estimates by competent engineers and mechanics sufficient to demonstrate the practicability of an efficient system of sewage or drainage, or both, for such township. In contracting for the plans under these provisions, the township committee are the agents of the municipality, and the contract bound the township.

---

On error to the Hudson Circuit.

The declaration contained the common counts for work and labor, &c., performed by Charles B. Brush, plaintiff's testator, for and at the request of defendant.

365

At the close of plaintiff's case a nonsuit was granted.

Before MAGIE, CHIEF JUSTICE, and Justices DEPUE, VAN SYCKEL and LIPPINCOTT.

For the plaintiff, *Edwin A. S. Lewis.*

For the defendant, *Augustus A. Rich.*

The opinion of the court was delivered by

MAGIE, CHIEF JUSTICE.   The bill of exceptions in this case discloses that plaintiff produced evidence from which the jury might infer that Charles B. Brush, deceased, a civil engineer, was employed by the township committee of defendant to make a map or plan for a proposed system of sewers in that township, at the price of $1,000; that he made and delivered such a map to the township committee, who retained and used it for some time and then returned it to him.   It also appears that there was a supply of water furnished by the Hackensack Water Company, through a system of pipes, in many of the streets of the township.

When plaintiff rested her case, counsel for defendant moved for a nonsuit, on the ground that the township committee possessed no power to make such a contract.

The trial judge granted the motion, to which exception was duly taken and a bill of exceptions sealed.

The only question presented is whether the township committee had power to bind the defendant for the cost of such work and labor as Brush was shown to have done.

The plaintiff's contention is that such power is conferred by the provisions of the act entitled "An act to provide for sewage and drainage in incorporated townships in which there is a public water-supply," passed April 14th, 1890, as amended by an act entitled "An act to amend an act entitled 'An act to provide for sewage and drainage in incorporated townships in which there is a public water-supply,' passed April 14th, 1891," which amendatory act was approved April 17th, 1891.   *Gen. Stat., pp.* 3653, 3657.

By the first section as amended it is provided that any incorporated township of this state in which a supply of water for public or domestic use is furnished or shall be furnished from water works it shall be lawful for the board of the township committee or for the governing body of such township to provide for, obtain and cause to be constructed a system of sewage or drainage, or both. By section 2 it is made lawful for the said board of the township committee or other governing body of said township to cause to be made surveys, plans and estimates by competent engineers and mechanics sufficient to demonstrate the practicability of an efficient system of sewage or draining, or both, for said township.

On the part of the defendant the contention is that the acts relied on were not within the power of the legislature because they apply to and regulate the municipal affairs, not of all townships but of such only as have a supply of water for public or domestic use furnished from water works. This limitation, it is urged, makes the legislation local or special, and so void.

The cases in this court and the Court of Errors involving the construction of the constitutional provision thus invoked are entirely harmonious and are too well known to require citation. They unite in declaring that the clause does not interdict but permits legislation which operates only on a class of municipalities, provided those included in the legislative scheme possess some distinguishing characteristic, which, with reference to the legislative purpose, indicates the peculiar appropriateness of such legislation as to them and the inappropriateness of such legislation as to others which are not included.

Applying this test to these acts, it is obvious that the question is whether the classifications of the townships on which they operate is justified by the single distinguishing characteristic that they have a certain prescribed supply of water. As all townships are incorporated, the operation of the acts, but for this limitation, would affect all such municipalities.

This question is not solved by the claim that all inhabited places require some facilities for the disposal of sewage and drainage. If that be true it must, however, be admitted that the needs of municipalities in that respect vary in degree and are more urgent in some cases than in others.

Density of population, the character of the soil and various other conceivable causes might necessitate and require the adoption of some system, and so justify a classification based on such distinctions.

The legislature has recognized such distinctions in its legislation on this subject. Thus, by the act entitled "An act to provide for drainage and sewerage in townships," approved March 26th, 1890, power was conferred on all townships which should adopt the provisions of the act to provide for a system of sewerage and drainage in very similar mode to that prescribed in the acts in question. By such legislation all municipalities of that class could act if a majority of voters desired.

A few weeks later the act of 1890 now in question was passed, whereby townships to which it applies were empowered, without any vote of the inhabitants and upon the mere initiative and will of the township committee, to provide for such a system. The plain and apparent purpose of this legislation was to give that opportunity to such townships because of a legislative determination that the supply of water for public and domestic use created a need for sewerage and drainage more urgent than existed in other townships.

The use of such a characteristic to classify municipalities for such legislation is not novel. By the act entitled "An act to provide for drainage and sewage in densely populated townships in which there is a public water-supply," approved March 4th, 1884 (*Pamph. L., p.* 32), a class of such municipalities was segregated for such legislative purpose by reason of distinctions arising from density of population and from the possession of a supply of water for public and domestic use furnished from water works. This act was considered and approved in this court, though the precise question now

presented does not seem to have been raised. *Gibbs* v. *Northampton*, 23 *Vroom* 496.

Considering the difference in respect to sewage and drainage in townships which have and those which have not such a water-supply, it was, in my judgment, within the power of the legislature to determine that the needs of the former townships in that respect varied from and exceeded the needs of the others, and thereupon to pass legislation which it judged was appropriate to those which had such needs and inappropriate to the others.

This objection cannot avail defendant.

It is further contended that if the acts are valid they conferred no authority on the township committee to contract for the map and plan in question.

The language by which authority is conferred is singular. The committee is authorized to "cause to be made surveys, plans and estimates * * * sufficient to demonstrate a practical and efficient system of sewage."

The powers elsewhere in the acts, conferred on the township committee, are very extensive. As we have seen, they are empowered to provide, obtain and cause to be constructed a system of sewage. In furtherance of that object, they may treat with the owners of land deemed by them necessary for that purpose; they may purchase and take conveyances of such lands, and, upon failure to agree upon compensation, may exercise the right of eminent domain and condemn the required lands.

Reading the whole act together, I deem it clear that the legislature has conferred on the township committee in such townships these extensive powers, and that they have been conferred on them as the representatives of the municipality. It was competent, therefore, for the township committee to contract with a civil engineer like the deceased (Brush) to furnish a plan tending to demonstrate a practical and efficient system of sewage. Such a contract was made for and bound the township. Whether the map and plan furnished was one of that sort was a question for the jury.

It is unnecessary to consider how the money which Brush may become entitled to under the contract is to be raised. Under the acts in question, the costs, damages and expenses are to be raised by assessments on lands benefited. Whether the expenses of such plans as the township committee obtained are to be included in the assessment, or whether the township must raise and pay for them, are questions not now to be considered.

The judgment of nonsuit must be reversed.